IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES SULLIVAN, JR., et al., | : | CIVIL ACTION |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| TRUIST BANK, et al., | : | NO.  23-cv-3363 |
| *Defendants*. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                                              **February 5, 2024**

Plaintiffs James Sullivan, Jr., Kathleen Sullivan, and James Sullivan, Jr., Administrator of the Estate of John Michael Sullivan bring this suit against Defendants Truist Bank and Truist Bank employees Shawon Goodman and Shemane Cave. Plaintiffs James Sullivan, Jr. and Kathleen Sullivan are the parents of Decedent John Michael Sullivan ("John" or "Decedent"). Plaintiff James Sullivan, Jr., also serves as the Administrator of the estate of his son, Decedent John Michael Sullivan. Plaintiffs allege that Decedent was the victim of an online extortion scheme and that he suffered a wrongful death on January 4, 2023, caused by Defendants' negligence.

Presently before this Court is Defendant Truist Bank's Motion to Dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6). ECF No. 13. For the reasons set forth below, the Court will GRANT Defendant's motion.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

Decedent John Michael Sullivan and his mother, Plaintiff Kathleen Sullivan, were joint account holders of a bank account at Defendant Truist Bank. ECF No. 1-3 ¶ 9. John was a minor when he and Ms. Sullivan opened the account on July 29, 2019. ECF No. 13-1, Ex. 1. In January 2023, a third-party contacted John and attempted to access his banking information through blackmail and extortion. ECF No. 1-3 ¶ 10. John sought to provide this third-party his banking

1

information so that these individuals could access funds in the joint account. *Id.* ¶ 11. Several withdrawals from the account ensued, some of which John did not initiate. *Id.* ¶ 12. Other withdrawals were initiated from John's personal devices. *Id.* Several thousand dollars were released from the account via Zelle, an online payment application. *Id.* ¶ 13.

Defendant Truist Bank then began to flag additional transactions as fraudulent and blocked withdrawals from the account. *Id.* ¶ 14. Distressed and desperate, John placed several calls to Truist Bank's corporate customer service line, seeking the release of funds to the extortioners. *Id.* ¶¶ 15, 20. On January 4, 2023, John went several times to the Glenside, PA, branch of Truist Bank to withdraw funds. *Id.* ¶ 19. There, Shawon Goodman, manager of the branch, Shemane Cave, employee of the branch, and other branch employees told John that he could not access his funds. *Id.* ¶¶ 18, 22, 26. John then left the bank and took his own life on the same day, January 4, 2023. John was twenty years old. ECF. No. 8-2 at 1.

Thereafter, on April 4, 2023, Plaintiffs received a notice from the bank and a telephone call from Truist Bank's representatives. ECF No. 1-3 ¶ 29. Plaintiffs allege that in this notice and on the call, bank representatives made admissions regarding Truist Bank's policies with respect to the events of January 4, 2023. *Id.*

On August 8, 2023, Plaintiffs Kathleen Sullivan and James Sullivan, Jr. filed their complaint against Defendants Truist Bank, Shawon Goodman, and Shemane Cave in the Pennsylvania Court of Common Pleas of Philadelphia County. ECF Nos. 1-3, Ex. 1. Plaintiffs brought the following claims of action against all Defendants: Negligence (Counts I and III); Vicarious Liability (II); Wrongful Death under the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301 (Count IV); and a Survival Action under the Pennsylvania Survival Act, 42 Pa. C.S.A. § 8302 (Count V). *Id.*

On August 29, 2023, Defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1441 on the basis that Plaintiffs (both Pennsylvania residents) fraudulently joined individual Defendants Goodman and Cave (also Pennsylvania residents) to defeat this Court's diversity jurisdiction. (Defendant Truist Bank is a North Carolina corporation.) ECF No. 1 ¶ 16. Plaintiffs moved to remand the case to the Philadelphia County Court of Common Pleas. ECF No. 8. This Court denied the motion to remand and dismissed Shawon Goodman and Shemane Cave as parties to the action on November 7, 2023. ECF No. 12. As the sole remaining Defendant in the action, Truist Bank filed its Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) on November 13, 2023. ECF No. 13.

## II.     LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). The Court will grant a motion to dismiss if the factual allegations do not "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). A complaint is plausible on its face when the plaintiff pleads a factual contention that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts are required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may

be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint will not survive if it contains merely "an unadorned, the defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) or "'naked assertion[s]' devoid of 'further factual enhancement,'" *id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

### III.  DISCUSSION

All counts in this action are dismissed. Plaintiffs have made clear that all their counts sound in negligence only. *See, e.g.*, ECF No. 17-1 at 6. These counts fail because Plaintiffs cannot sustain a claim for negligence, which requires a plaintiff to establish the following four elements: 1) the existence of a duty or obligation recognized by law; 2) a failure on the part of the defendant to conform to that duty, or a breach thereof; 3) a causal connection between the defendant's breach and the resulting injury; and 4) an actual loss or damage suffered by the complainant. *Orner v. Mallick*, 527 A.2d 521, 523 (Pa. 1987).

**A. Plaintiffs cannot plausibly allege that Defendant Truist Bank proximately caused Decedent's death because, under Pennsylvania law, suicide is not recognized as a type of harm resulting from ordinary negligence.**

We begin our negligence analysis with the element of causation and will then address the element of duty. Under Pennsylvania law, even if the Plaintiff "has established that a duty of care is breached, the Plaintiff must still establish a causal connection between the defendant's negligent conduct and the plaintiff's injuries." *McPeake v. William T. Cannon, Esquire, P.C.*, 553 A.2d 439, 441 (Pa. Super. Ct. 1989) (citation omitted). Proximate or legal causation is defined as "[t]hat which, in a natural and continuous sequence, unbroken by any [su]fficient intervening cause,

4

produces the injury, and without which the result would not have occurred." *Wisniewski v. Great Atl. and Pac. Tea Co.*, 323 A.2d 744, 748 (Pa. Super. Ct. 1974) (citations omitted). "Generally, suicide has not been recognized as a legitimate basis for recovery in wrongful death cases. This is because suicide constitutes an independent intervening act so extraordinary as to not have been reasonably foreseeable by the original tortfeasor." *McPeake*, 553 A.2d at 440-41 (citations omitted).

Pennsylvania courts have recognized suicide as a legitimate basis for wrongful death in limited instances only, namely in cases involving hospitals, mental health institutions, and mental health professions. *See*, *e.g.*, *Simmons v. St. Clair Mem'l Hosp.*, 481 A.2d 870, 877 (Pa. Super. Ct. 1984) (finding that jury could have concluded that decedent – a patient with suicidal tendencies receiving treatment in the psychiatric unit of a hospital – looked to the hospital for care); *see also Smith v. United States*, 437 F.Supp. 1004, 1010. (E.D. Pa. 1977) (suicide of a veteran under treatment for paranoia and schizophrenia and with a long history of violent behavior was reasonably foreseeable and hospital was negligent in releasing him). In these cases, there is a custodial relationship between hospital and patient, and the hospital has a recognized duty of care towards the defendant. *McPeake*, 553 A.2d at 441.

In other negligence cases involving suicide, "courts have required both a clear showing of a duty to prevent the decedent's suicide and a direct causal connection between the alleged negligence and the suicide." *Id*. (citing *Malloy v. Girard Bank*, 436 A.2d 991, 993-94 (Pa. Super. Ct. 1981) (employer's practice of keeping a loaded gun at work, which "feeble-minded" decedent used to commit suicide, did not constitute a dereliction of due care); *Freedman v. City of Allentown*, 651 F.Supp. 1046, 1048 (E.D. Pa. 1987) (no facts alleged support a conclusion that police should have known that prisoner might take his own life)).

Finally, courts have recognized suicide as a basis for recovery under the Pennsylvania Workers' Compensation Act, in circumstances where an employer-employee relationship exists. In those instances, compensation may be granted if a suicide was caused by pain, depression, or despair resulting from a workplace injury so severe as to override rational judgment. *See*, *e.g.*, *Globe Sec. Sys. Co. v. W.C.A.B (Guerro)*, 520 A.2d 545, 547 (Pa. Commw. Ct. 1987) (medical evidence shows that decedent suffered a work-related injury which resulted in his suicide).

Here, none of these limited exceptions apply to override the general rule that under Pennsylvania law, suicide is not recognized as a legitimate basis for recovery in wrongful death cases. Defendant Truist Bank is not a hospital or mental health institution, and the parties did not have a custodial relationship such that Truist Bank had a special duty of care to Decedent, his co-account holder (who was also his mother), or his father. Plaintiffs were ordinary customers with ordinary bank accounts, free to use Truist Bank's services at will.

Plaintiffs thus attempt to circumvent the long-held principle of Pennsylvania law that suicide is not a legitimate basis for recovery in wrongful death cases by positing that this rule does not apply to the facts of this case. Plaintiffs assert that Decedent's suicide was neither a superseding cause of harm nor so extraordinary as to make it unreasonably foreseeable. ECF No. 17-1 at 10-11. Rather, Plaintiffs identify eight instances of alleged negligence, which Plaintiffs claim caused foreseeable harm to Plaintiffs. These breaches include:

> a) failure to notify Kathleen Sullivan of the fraudulent activity on the bank in violation of the bank's internal policies and industry standards;
>
> b) failure to contact law enforcement despite knowing of fraudulent activity on the account;
>
> c) failure to notify Plaintiff Kathleen Sullivan, as co-account holder, of Decedent's erratic and concerning behavior on the phone and in the bank;
>
> d) failure to establish policies that would identify extortion occurring on susceptible

customers of the bank, namely Decedent;

e) failure to enforce policies that would identify extortion occurring on susceptible customers of the bank, namely Decedent;

f) failure to adopt and enforce policies, procedures, and/or industry standards that would identify online extortion and take reasonable steps to protect customers' funds;

g) failure to meet with Decedent to address the fraudulent activity on his account; and

h) failure to identify that the fraudulent activity was associated with online extortion and take reasonable steps to protect Decedent's funds and mental and physical well-being.

(ECF No. 1-3, at ¶¶ 40, 49).

Plaintiffs further assert that because Truist Bank operates in "today's social media crazed culture, along with the well and recently documented spate of sextortion scandals causing suicide of young boys and men in [the] United States," Decedent's suicide was foreseeable. ECF No. 17 at 10-11. That is, Truist Bank knew, or should have known, from news reports that refusing to release funds from Decedent's bank account to criminal extortionists could cause Decedent to take his own life.

However well-stated, these allegations have no legal foundation and do not support creating another exception to the general rule that suicide is not recognized as a legitimate basis for recovery in wrongful death cases. Accordingly, under the Court's negligence analysis, Plaintiffs' negligence claims fail because Plaintiffs fail to show a causal connection between Defendant's negligent conduct and Plaintiffs' injuries.

**B. Plaintiffs' negligence claims also fail because Truist Bank did not owe a duty of care to Plaintiffs.**

Even if there were causation here, there is no duty. Plaintiffs plead that Defendant "owed a duty to the Plaintiff's Decedent and Plaintiff Kathleen Sullivan to protect their funds [and] to notify Kathleen Sullivan about the extortion and/or fraud attempts on the funds in the account."

7

ECF No. 1-3 ¶ 25. "The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000) (citation omitted). This "question of whether a defendant owes a plaintiff a duty of care is a question of law to be answered by the court." *Hoffman v. Paper Converting Mach. Co.*, 694 F. Supp. 2d 359, 368 (E.D. Pa. 2010) (applying Pennsylvania law) (citation omitted).

A trial court applies the "Althaus test" to determine if a duty of care is owed by Defendant to Plaintiff. Under the five-part test, the court weighs discrete factors, which include "(1) the relationships between the parties; (2) the social utility of the [defendant's] conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the [defendant]; and (5) the overall public interest in the proposed solution. *Althaus*, 756 A.2d at 1169 (citations omitted). "[A] duty will be found to exist where the balance of these factors weighs in favor of placing such a burden on a defendant." *Hoffman*, 694 F.Supp. 2d at 368 (quoting *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008-09 (Pa. 2003)).[1]

With respect to element one, the relationship between Truist Bank and Plaintiffs does not weigh in favor of imposing a duty of care. "The existence of a duty in any given situation is

---

[1] Plaintiffs invoke Section 323 of the Restatement (Second) of Torts to assert that Truist Bank owed duties to Decedent and Plaintiffs. Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:
>
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) Torts § 323 (1965).

Yet Section 323 does not "change the burden of a plaintiff to establish the underlying elements of an action in negligence *nor can it be invoked to create a duty where one does not exist.*" *Gardner by Gardner v. Consol. Rail Corp.*, 573 A.2d 1016, 1020 (Pa. 1990) (emphasis in original) (citation omitted). Other than references to unspecified policies, procedures, and industry standards, Plaintiffs fail to show how Section 323 provides a legally cognizable basis for a duty of care owed by Truist Bank to Plaintiffs.

predicated on a relationship existing at the time in question." *Dumanski v. City of Erie*, 34 A.2d 508, 509 (Pa. 1943).[2] Plaintiffs have cited no case, statute, or express bank policy indicating that the parties "stand in a special position of respect or trust with each other, so as to impose a special duty of care*." See Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 911 A.2d 133, 138-39 (Pa. Super. Ct. 2006) (discussing duties owed between banks). The relationship between the parties was one of banker and depositor, not one of caregiver or custodian. Thus, Plaintiffs here have failed to show that the relationship between Truist Bank and Decedent and Ms. Sullivan created a duty of care beyond their banking relationship.

Next, the Court weighs the social utility of Truist Bank's actions against the nature of the risk and foreseeability at harm. Online extortion, scams, and fraud are indeed invidious and criminal, as Plaintiffs note. *See, e.g.*, ECF No. 17.1 at 3, n.1. Protection against these schemes is needed. *See Commerce Bank*, 911 A.2d at 139 ("There is high social utility in a bank taking action against a client's account when it suspects fraud or check-kiting."). And, to be clear, Truist Bank took actions to protect Decedent and Ms. Sullivan's banking funds from extortion. But also insisting that Truist Bank assume additional obligations intended to protect a customer's mental and physical well-being against these schemes lacks both practical and reasonable social utility.

Further, as discussed *supra*, Truist Bank did not create the harm that was suffered by Decedent. "'[D]uty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others.' Generally, our Courts have been reluctant to impose a duty to protect a member of the general public from the harmful acts of third parties, in the absence of special circumstances." *Commerce Bank*, 911 A.2d at 139 (quoting *R.W. v. Manzek*, 888 A.2d 740,

---

[2] The parties disagree as to whether Truist Bank had a contractual obligation under the account's Business Services Agreement to notify Ms. Sullivan of fraudulent activity on the account, but Plaintiffs are not making a breach of contract claim here. *See, e.g.*, ECF No. 17-1 at 11.

9

747 (Pa. 2005) (additional citations omitted)). Criminal extortionists created the harm here, not Truist Bank. Decedent's suicide was not a foreseeable outcome of Truist Bank's obligations to protect Decedent's funds or purported obligation to notify Ms. Sullivan of fraudulent activity on the account. Thus, after weighing the social utility of imposing a duty of care on Truist Bank against the foreseeability of harm to Decedent, these factors weigh against imposing a duty of care upon Truist Bank to Plaintiffs.

Factor four – the consequences of imposing a duty upon the actor – also weighs against imposing a duty of care upon Truist Bank. Truist Bank was tasked with providing banking services to Decedent and Ms. Sullivan. Truist Bank seemingly met its duty to guard against fraud by flagging suspect transactions and freezing assets in Plaintiffs' joint account, in compliance with bank policies. ECF No. 13 at 4. When Decedent went to the bank on January 4, 2023, bank employees continued to adhere to bank policies by refusing to release bank funds. ECF No. 1-3 ¶ 25. In fact, Plaintiffs acknowledge that the bank employees owed this duty to protect Plaintiffs' funds. *Id*.

But Plaintiffs go a step further to assert that Truist Bank had a duty to notify the co-account holder, and that doing so would have enabled Ms. Sullivan "to address the attempted extortion with the Plaintiff's Decedent and prevent[] his tragic taking of his own life." *Id*. ¶ 31. Such an assertion presumes that the bank knew or should have known that notifying Ms. Sullivan would have prevented Decedent's suicide. Such knowledge is well beyond the purview and expertise of a bank. At the time, Decedent was no longer a minor. Ms. Sullivan could have been a business partner or distant relation of Decedent. In other words, imposing a general duty on a bank to notify joint account holders of fraud to prevent one of the account holders from self-harm is not reasonable. A duty between parties arises from policy considerations, which in this instance weigh

heavily against imposing a duty of care on Truist Bank beyond those related to guarding against fraud.

Finally, there is a public interest in imposing on banks a legal duty to care for customers' mental and physical well-being, yet doing so would create an unreasonable burden. The banking industry is well-regulated and banks routinely take measures to protect against fraud. However, imposing an additional duty to protect the mental and physical well-being of customers from the effects of fraud is beyond the purpose and competencies of a bank.

In sum, an analysis of the allegations here under the five-part Althaus test makes clear that there is no legally cognizable duty of care between the parties. Accordingly, Plaintiffs' negligence claims are not viable.

## IV. CONCLUSION

This young man's passing was tragic and we have compassion and sympathy for him and his loved ones. While an intervention at some point might have led to a different outcome, no legal duty required Defendant to intervene under the circumstances here. Unfortunately, we are left only with heart-wrenching "what ifs" that are compelling, yet not legally cognizable. Accordingly, all counts here are dismissed.

**BY THE COURT:**

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**